**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**James Folsom,**

*Plaintiff,*

v.

**TEKsystems, Inc., Vineesha Paladugu, and**
**Srikanth Gopal,**

*Defendants.*

Civil Action No.: _____3:23cv164_____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff James Folsom ("Mr. Folsom" or "Plaintiff"), by and through undersigned counsel, files this Complaint against Defendants TEKsystems, Inc., Vineesha Paladugu, and Srikanth Gopal (collectively, "TEKsystems" or "Defendants"), and in support thereof, states as follows:

## NATURE OF THE CASE

There is perhaps no policy more futile than that which demands a remote worker become vaccinated against COVID-19 to maintain a job in which 100% of the work performed is completed within the confines of his own home. The only exception to that would be an instance in which the basis for which the employee abstains from vaccination is based upon his sincerely held religious beliefs which prohibit him from becoming vaccinated. But that is precisely the case here.

Plaintiff is a religious man whose sincerely held religious beliefs prohibit him from becoming vaccinated against COVID-19. Fortunately, Plaintiff poses *literally* zero risk to TEKsystems. Specifically, Plaintiff is a remote worker who never comes into contact with any TEKsystems employee, customer, or frankly, any other individual whatsoever. As such, he cannot

transmit COVID-19. But nevertheless, TEKsystems insisted that he become vaccinated, and that he do so in violation of his sincerely held religious beliefs.

Plaintiff submitted to TEKsystems a request for a reasonable accommodation, but not only did TEKsystems refuse to grant it, upon information and belief, TEKsystems never even reviewed it. Then, to make matters worse, after Plaintiff inquired as to the status of his religious accommodation request, TEKsystems publicly humiliated and embarrassed him by sharing his sensitive, personal medical information in a massive blast email to an undisclosed number of TEKsystems employees. As a result, and likely as the intended result, Plaintiff's colleagues, including Defendants Vineesha Paladugu, and Srikanth Gopal harassed Plaintiff, humiliated Plaintiff, and otherwise engaged in a barrage of discriminatory and retaliatory conduct for one reason and one reason only: Plaintiff is a religious man and member of a protected class.

As explained below, the harassment, discrimination, retaliation, and failure to accommodate came to a bitter conclusion on March 25, 2022, when TEKsystems terminated Plaintiff. And to make matters even worse, TEKsystems manufactured the entire basis for which Plaintiff was terminated. Despite its claims that it granted Plaintiff's accommodation request and terminated him due to "unprofessional behavior",  TEKsystems itself produce the email it claims to have sent Plaintiff granting him an accommodation, nor can TEKsystems point to a single instance in which Plaintiff's behavior rose to the level of the lack of professionalism that warrants termination—especially when his behavior, namely, using an explicative word when questioning those who harassed him for nearly 5 months straight, is contrasted with the egregious, repulsive, *and unlawful* conduct complained of herein.

## **PARTIES**

1.    Plaintiff James Folsom is an adult resident of Mecklenburg County, Virginia and a former TEKsystems employee. At all times relevant, Mr. Folsom was employed as a Quality

Assurance Automation Lead (SDET III) until TEKsystems discriminated against him and terminated Mr. Folsom's employment on the basis of his religion and perceived disability on or about March 25, 2022.

2.     Defendant TEKsystems, Inc. is a Maryland corporation that specializes in providing technological support services to clients around the world, including within the United States and specifically, the Commonwealth of Virginia. At all times relevant, TEKsystems employed more than 5,000 persons and maintained offices in Virginia and within this district. As such, TEKsystems is subject to the provisions of Title VII which include *inter alia* the obligation that TEKsystems reasonably accommodate its employees (such as Mr. Folsom) with sincerely held religious beliefs.

3.     Defendant Vineesha Paladugu is a Senior Quality Assurance Automation Engineer (SDET2) and employee of TEKsystems. At all times relevant, Defendant Paladugu was Plaintiff's colleague and engaged in the discriminatory acts complained of herein.

4.      Defendant Srikanth Gopal is a Senior Quality Assurance Automation Engineer (SDET4) and employee of TEKsystems. At all times relevant, Defendant Gopal was Plaintiff's supervisor and engaged in the discriminatory acts complained of herein.

5.     TEKsystems is vicariously liable for the conduct of its employees and adverse employment actions as alleged herein.

## JURISDICTION

6.     Jurisdiction is conferred upon this court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12117, both of which provide for original jurisdiction for Plaintiff's claims arising under the laws of the United States.

7.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims brought pursuant to Title VII, the Code of Virginia, and Virginia common law,

in that such claims are so closely related to Plaintiff's federal claims providing the basis for this Court's original jurisdiction as to satisfy the same case or controversy requirement prescribed by Article III of the United States Constitution.

## VENUE

8.    Venue is proper pursuant to U.S.C. §1391 in that TEKsystems conducts substantial business in this district, employs more than 100 people within this district, and the events giving rise to this action occurred within this district.

9.    Venue is also proper pursuant to 42 U.S.C. § 2000e-(5)(f)(3) because the alleged unlawful employment practices were committed within this district, the employment records relevant to the alleged unlawful employment practices are maintained and administered in this district, and TEKsystems maintains an office and conducts substantial business in this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.    On March 25, 2022, TEKsystems terminated Plaintiff.

11.    On or about September 19, 2022, Plaintiff filed a formal Charge of Discrimination with the EEOC.

12.    On December 8, 2022, the EEOC issued Plaintiff a Notice of Right to Sue Letter in regard to his aforesaid Charge. (*See* Exhibit 1.)

13.    On March 8, 2023, Plaintiff commenced this action, which is within the ninety (90) day timeframe set forth for commencing an action under Title VII.

14.    Plaintiff has exhausted all administrative remedies and he has fully satisfied all conditions precedent in maintaining this action, in that Plaintiff filed his formal complaint with the EEOC within 180 days of the last date of discrimination complained of herein and hereby initiates this action within ninety (90) days of receiving his Notice of Right to Sue Letter.

//

<u>**STATEMENT OF FACTS**</u>

**I.  Background and TEKsystems' Mandatory COVID-19 Vaccination Policy**

15.     In March 2021, Plaintiff began working for TEKsystems.

16.     At the time TEKsystems hired Plaintiff, it did not impose a COVID-19 vaccination or testing requirement as a condition precedent to employment.

17.     At all times relevant, Plaintiff worked in an entirely remote capacity.

18.     At all times relevant, Plaintiff worked from the confines of his own home and never came into physical or in-person contact with any TEKsystems employees, directors, officers, or agents, nor did Plaintiff come into physical or in-person contact with any TEKsystems' customers or clients.

19.     As a completely remote worker, Plaintiff could not transmit COVID-19 to any TEKsystems employee or worker, regardless as to whether he ever contracted COVID-19 or not.

20.     Despite the literal impossibility that existed concerning Plaintiff's ability to transmit COVID-19, TEKsystems nevertheless demanded that Plaintiff become vaccinated against COVID-19 pursuant to the company's own self-imposed mandate.

21.     Upon learning that TEKsystems was *requiring* Plaintiff to become vaccinated as a condition of continued employment, Plaintiff promptly requested from TEKsystems an accommodation based on his sincerely held religious beliefs as a devout Christian.

22.     In his request, Plaintiff advised TEKsystems that, fundamental to the Christian faith is a teaching that requires Christians to refuse a medical intervention, including a vaccination, if his or her informed conscience comes to this sure judgment.

23.     Plaintiff also referenced authoritative Church teachings that demonstrate the principled religious basis on which a Christian may determine that he or she ought to refuse certain vaccines, include without limitation, the sincere belief that:

    a.   Vaccination is not morally obligatory in principle and so must be voluntary;

    b.   There is a general moral duty to refuse the use of medical products, including certain vaccines, that are produced using human cells lines derived from direct abortions. It is permissible to use such vaccines only under certain case-specific conditions, based on a judgment of conscience;

    c.   A person's informed judgments about the proportionality of medical interventions are to be respected unless they contradict authoritative Christian moral teachings;

    d.   A person is morally required to obey his or her sure conscience; and

    e.   Abortion is a sin and contrary to the teachings of the Christian Church. As a result, a Christian may invoke Church teaching to refuse a vaccine developed or produced using abortion-derived cell lines.

24.    At all times relevant, TEKsystems knew Plaintiff was a religious man with sincerely held religious beliefs that prohibited his compliance with TEKsystems' COVID-19 vaccination policy.

25.    At all times relevant, TEKsystems knew Plaintiff's sincere beliefs were religious.

26.    At all times relevant, TEKsystems knew that Plaintiff's religious beliefs were sincerely held.

27.    At all times relevant, TEKsystems adopted and enforced the policies complained of herein intentionally, willfully, recklessly, and with abject disregard of the rights to which the United States Constitution affords American citizens, such as Plaintiff.

28.    In approximately early April of 2021, TEK systems began pressuring Plaintiff into becoming vaccinated despite the fact that Plaintiff's sincerely held religious beliefs prohibit him from becoming vaccinated against COVID-19.

29.     Aware of Plaintiff's religious beliefs and the arbitrary and capricious nature of its policy requiring Plaintiff—an *entirely* remote worker—to get vaccinated, TEKsystems began pressuring Plaintiff into getting vaccinated and coercing him into doing so despite its knowledge that Plaintiff's sincerely held religious beliefs prohibited him from doing so.

30.     TEKsystems made it known and readily apparent that any religious person who values their religion over TEKsystems' policy-based preferences would not remain an employee of the company.

31.     After its coercive tactics and attempts to pressure Plaintiff into submitting to the vaccine in violation of his sincerely held religious beliefs failed, TEKsystems adopted and implemented a new strategy to circumvent Plaintiff's exercise of his fundamental right to freely exercise his religion.

32.     Specifically, TEKsystems began adopting and implementing new policies that slowly became increasingly pervasive and invasive in hopes that through these policies, Plaintiff (and other religious employees) would "break" and succumb to the company's policy-based demand that *everyone* is vaccinated—including:

> a.  those who are prohibited from becoming vaccinated due to sincerely held religious beliefs and federal constitutional protections concerning the same; and
>
> b.  those whose vaccination status, irrespective of their sincerely held religious beliefs, is immaterial as to TEKsystems' concerns due to the remote nature of their work.

33.     It is well established that it is a fundamental and constitutionally protected right to freely exercise one's religion. It is further codified in the United States Code that employers are

expressly prohibited from discriminating against employees based on their sincerely held religious beliefs.

34.    Notwithstanding the indisputable nature of the absolutely protected basis for which Plaintiff remained unvaccinated, even assuming *arguendo* Plaintiff was not a religious man, TEKsystems' policy is overbroad, arbitrary, and capricious, in that requiring remote employees to become vaccinated does not, in any way, achieve or satisfy job-related or business necessity interests.

35.    Plaintiff, who works from the confines of his own home, cannot transmit COVID-19 to anyone, and that's even assuming for the sake of argument Plaintiff were to contract COVID-19.

36.    Moreover, the policy as applied to remote workers is overbroad, arbitrary, and capricious as it does not effectuate anything–that is, the means to an end are not, in reality, means that achieve any end as the vaccines do not prevent contraction or transmission of COVID-19.

37.    In short, even the most strained mind would struggle to think of a more irrelevant and futile employment policy.

38.    Yet nevertheless, TEKsystems terminated Plaintiff because he exercised his fundamental right to freely exercise his religion and be reasonably accommodated in light of his sincerely held religious beliefs–and this is notwithstanding the arbitrary, capricious, and futile nature of the policy itself.

**II:  Basis for Manufacturing False Pretext to "Justify" Terminating Plaintiff**

39.    According to TEKsystems, it "was unaware of any issues until receipt of [Plaintiff's] Charge [of Discrimination]." (*See* <u>Exhibit 2</u>, Def.'s EEOC Position Statement.) But this is false.

40.     Specifically, TEKsystems falsely claims that it granted Plaintiff's religious accommodation request and sent Plaintiff a copy of his approval via email. Plaintiff never received this alleged email.

41.     Further evidencing the false nature of TEKsystems claims that it "approved [Plaintiff's] request for a religious accommodation" is the fact that TEKsystems failed to produce the aforesaid alleged email even despite claiming in its own position statement it would be provided.[1]

42.     TEKsystems never granted Plaintiff's religious accommodation request to its mandatory COVID-19 vaccination policy.

43.     Upon information and belief, TEKsystems never even reviewed Plaintiff's religious accommodation request to its mandatory COVID-19 vaccination policy.

44.     In asserting that TEKsystems "was unaware of any issues", TEKsystems is referring to the "issues" concerning its own liability for violating Plaintiff's fundamental and constitutionally protected rights including without limitation, Plaintiff's:

      a.  Procedural due process right to have his religious accommodation request reviewed on a case-by-case basis;

      b.  First Amendment right to freely exercise his religion;

      c.  Federally protected and fundamental right to be free from workplace discrimination based upon his religion;

      d.  Federally protected and fundamental right to a reasonable accommodation of his sincerely held religious beliefs;

---

[1] TEKsystems claimed "[a]ttached as Exhibit C is a copy of the email approval." *See* Def.'s EEOC Position Stmt. at 2. No such document was ever attached or produced.

e.   Federally protected and fundamental right to be free from retaliation based upon his religion; and

f.   Federally protected and fundamental right to be free from retaliation based upon his engagement in constitutionally protected activity, including his right to request and receive a reasonable accommodation for his sincerely held religious beliefs.

45.    TEKsystems only became aware of its own liability-related "issues" because contrary to its beliefs, Plaintiff would–and did–pursue justice after his unlawful termination.

46.    More specifically, TEKsystems was "unaware of any issues" because it did not believe Plaintiff would pursue a claim; however, upon receiving a copy of Plaintiff's Charge of Discrimination, TEKsystems realized it was incorrect in its assumption.

47.    As a result of its erroneous assumption that Plaintiff would not seek redress and upon learning that Plaintiff was seeking relief holding TEKsystems accountable, TEKsystems had two options: (1) it could either accept responsibility for its unlawful actions and attempt to resolve the matter absent court intervention; or (2) it could manufacture a false pretext to assert its decision to terminate Plaintiff was predicated on lawful grounds. Regrettably, this action is compelled by TEKsystems' election to proceed via the latter.

**III: The Manufactured False Pretext TEKsystems Asserts as to Why It Terminated Plaintiff**

48.    As mentioned above, TEKsystems fostered an environment where its employees exhibited a feverish affinity for being vaccinated, which in turn, also fostered an abject disdain towards anyone who was not vaccinated, such as Plaintiff.

49.    Aware of the hostility with which unvaccinated employees would be treated by their colleagues, TEKsystems took advantage of the opportunity to weaponize the hostile environment they created in hopes that, if TEKsystems turned a blind eye to the hostility Plaintiff's

colleagues subjected him to relentlessly, the hostility would ultimately "break" Plaintiff and he would submit to the mob-like demands.

50.     The first step in employing the aforesaid tactic was to ensure that it was known throughout the company that Plaintiff was not vaccinated. TEKsystems satisfied this step on September 23, 2021 by sending a company-wide email to a distribution list explicitly naming Plaintiff as "Worker Not Vaccinated." A photograph of the email distribution is below:



51.     Virtually immediately thereafter, Plaintiff became the center of a campaign of vitriol and his colleagues began harassing him at every opportunity they could get.

52.     From late September 2021 through March 25, 2021, Plaintiff's colleagues restlessly harassed him, humiliated him, and treated him with hostility because he was not vaccinated.

11

53.     In an effort to curtail the harassment, Plaintiff attempted to speak with various colleagues in hopes that if he shared in confidence that his sincerely held religious beliefs prohibit him from becoming vaccinated, the understanding as to why he had not gotten the vaccine would mitigate the pervasive hostility to which he was subjected.

54.     Regrettably, this attempt to diffuse the situation backfired and further incensed his co-workers. Rather than putting a stop to the harassment, the disclosure of his religious beliefs only further exacerbated the hostility to which he was subjected.

55.     On March 25, 2021, Plaintiff reached the threshold of the harassment and hostility he could endure and as a result, he attempted to contact his supervisor, Zachary Stonich, the Quality Assurance Director for FINRA–a TEKsystems client to whom TEKsystems assigned Plaintiff to work. But his efforts were ignored. Mr. Stonich, too, did not care as he likewise shared in the same feverish vaccination affinity as those who perpetrated the harassment and hostility for which Plaintiff contacted Mr. Stonich in the first place.

56.     Later that same day, Plaintiff's co-workers began berating him for running tests with a development Plaintiff created that enabled him to perform his job at a higher rate of both accuracy and speed. For context, by using his development Plaintiff was able to identify more than a dozen defects within the software he was working on that day alone.

57.     Due to the obvious need to conduct these tests, coupled with the efficiency and accuracy with which Plaintiff's development assisted him in completing his assigned duties, Plaintiff was perplexed why any co-worker would be upset that he was doing his job let alone when he was performing his duties far in excess of reasonable expectations.

58.    In response to the attacks, Plaintiff asked, "What are you talking about? [The test[2]] is broken right now. I just found another dozen defects this morning and if we are not going to run test cases then what the fuck are we doing here?" Mr. Folsom did not say anything further.

59.    That single sentence is the only statement Plaintiff made and falls squarely within the commonplace language frequented by his co-workers and others working on the same FINRA projects.

60.    Plaintiff is one of dozens of individuals who used an explicative, but he is the only TEKsystems employee allegedly terminated as a result. But as is clear, Plaintiff was not fired because he said a curse word. He was fired because he exercised his sincerely held religious beliefs and TEKsystems has disdain for anyone who is not vaccinated or for whom TEKsystems cannot break and coerce into becoming vaccinated against their will.

61.    Plaintiff seeks redress based on the aforesaid through the claims as follows:

## COUNT I
### RELIGIOUS DISCRIMINATION
### Violation of Title VII, 42 U.S.C. §§ 2000e, *et seq.*

62.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

63.    Plaintiff sincerely holds religious beliefs and is a member of a protected class based on his religion.

64.    Religion constitutes a protected class under Title VII.

65.    Plaintiff is an employee within the meaning of Title VII.

66.    TEKsystems is an employer within the meaning of Title VII.

---

[2] Plaintiff's duties involved examining a specific test for defects and identifying the defects so the test could be repaired. Plaintiff's development assisted him in identifying the defects quickly and accurately, yet his colleagues attacked him for running the test cases—the literal duty for which he was working and assigned to complete.

67.     Title VII forbids an employer from terminating a qualified employee such as Plaintiff from a job because of his need for religious accommodation, absent proof that granting the accommodation would cause it undue hardship. 42 U.S.C. §§ 2000e(j), 2000e-2(a)(1); *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015).

68.     This extension of actionable religious discrimination to include a failure to accommodate derives from Title VII's definition of "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

69.     A plaintiff can therefore make out a *prima facie* case under Title VII by showing (1) he held a bona fide religious belief, the practice of which conflicted with an employment duty; (2) the employer took adverse action—including the refusal to hire—because of the plaintiff's inability to fulfill the job requirement; and (3) the plaintiff's religious practice was a motivating factor in the employer's decision. *See Abercrombie & Fitch*, 575 U.S. at 775.

70.     Here, Plaintiff advised TEKsystems of his sincerely held religious beliefs that

        a.  vaccination is not morally obligatory in principle and so must be voluntary;

        b.  There is a general moral duty to refuse the use of medical products, including certain vaccines, that are produced using human cells lines derived from direct abortions. It is permissible to use such vaccines only under certain case-specific conditions, based on a judgment of conscience;

        c.  A person's informed judgments about the proportionality of medical interventions are to be respected unless they contradict authoritative Christian moral teachings;

        d.  A person is morally required to obey his or her sure conscience; and

e.  Abortion is a sin and contrary to the teachings of the Christian Church. As a result, a Christian may invoke Church teaching to refuse a vaccine developed or produced using abortion-derived cell lines.

71.    Plaintiff sincerely believes that his body is not to be altered in any way other than through means by which God created or through scientifically proven, safe, and effective manmade and necessary medical intervention. To consume or knowingly inject anything else into his body would constitute a sin and prevent his ability from one day, going to Heaven and sharing that Place with God.

72.    Plaintiff informed TEKsystems of this conflict and expressly sought an accommodation.

73.    In response to Plaintiff's request for an accommodation, TEKsystems took an adverse action against his by:

f.  Verbally degrading Plaintiff by telling him to get vaccinated repeatedly despite knowing his religious beliefs, making disrespectful statements concerning Plaintiff's religion with the intent to insult or harass Plaintiff, typing "666" in various codes that TEKsystems knew Plaintiff would be working on and therefore, would see and identify as nothing more than a harassing tactic intended to incense him and for no reason other than to humiliate and harass Plaintiff;

g.  Insulting Plaintiff with incessant demands to get vaccinated on more than twenty-five (25) occasions (and likely substantially more than 25 occasions) despite Plaintiff fully advising and informing TEKsystems that he was prohibited from doing so;

h.  Harassing and ridiculing Plaintiff because of his religion;

15

i.  Harassing and ridiculing Plaintiff because of he requested a reasonable accommodation;

j.  Ignoring Plaintiff's religious accommodation request;

k.  Refusing to respond to Plaintiff's religious accommodation request;

l.  Refusing to grant Plaintiff a religious accommodation request;

m.  Threatening to terminate Plaintiff;

n.  Ignoring Plaintiff;

o.  Enforcing arbitrary and irrelevant policies against Plaintiff despite the fact that doing so conferred no benefit upon TEKsystems;

p.  Demanding Plaintiff become vaccinated solely to harass him;

q.  Treating non-religious persons differently than Plaintiff;

r.  Treating non-religious persons in a positive manner while disrespecting and degrading Plaintiff because he is religious;

s.  Publicly disclosing Plaintiff's personal medical and sensitive information without his consent;

t.  Publicly disclosing Plaintiff's personal medical and sensitive information with the intent to humiliate, harass, induce harassment, or otherwise injure Plaintiff and his character;

u.  Inciting and encouraging other TEKsystems employees to engage in, or otherwise take discriminatory and retaliatory action against Plaintiff;

v.  Weaponizing information about Plaintiff's sincerely held religious beliefs in an attempt to constructively oust him or alternatively, in an attempt to manufacture false pretext to terminate Plaintiff's employment;

w. Weaponizing information about Plaintiff's sincerely held religious beliefs in an attempt to turn his co-workers against him and/or constructively oust him from employment.

74. TEKsystems, by and through its employees directors, officers, agents, or others for whom TEKsystems is vicariously liable, committed the acts complained of herein within the scope of their employment.

75. TEKsystems subjected Plaintiff to the aforesaid adverse employment actions and such actions constitute hostility in the workplace, harassment, disparate treatment.

76. The aforesaid actions complained of herein were taken against Plaintiff because Plaintiff exercised his First Amendment right to freely exercise his religion.

77. The aforesaid actions complained of herein were taken against Plaintiff because Plaintiff is a member of a protected class (religion) under Title VII.

78. Plaintiff membership in a class protected under Title VII (religion) was a motivating factor in TEKsystems' decision to terminate his employment and TEKsystems' decisions to otherwise engage in the conduct complained of herein, and such conduct constitutes adverse employment action as intended by Title VII.

79. At the time TEKsystems took adverse employment actions against Plaintiff, including his termination, Plaintiff's job performance was satisfactory or exceeded reasonable expectations.

80. At the time TEKsystems took the adverse employment actions complained of herein against Plaintiff, including his termination, Plaintiff was qualified for his position.

81. Non-religious employees outside of the protected class were treated more favorably than Plaintiff as they were not subjected to the harassment and hostility, constant attacks, and other humiliation to which TEKsystems subjected Plaintiff.

82. The aforesaid actions complained of herein were taken against Plaintiff because Plaintiff requested a reasonable accommodation for his sincerely held religious beliefs.

83. Plaintiff membership in a class protected under Title VII (religion) was a motivating factor in TEKsystems' decision to terminate his employment and TEKsystems' decisions to otherwise engage in the conduct complained of herein, and such conduct constitutes adverse employment action as intended by Title VII.

84. In subjecting Plaintiff to the harassment, hostility, attacks, humiliation, and in terminating Plaintiff's employment, TEKsystems acted intentionally, willfully, recklessly, or grossly negligently.

85. TEKsystems engaged in the unlawful conduct complained of herein and took the aforesaid adverse employment actions against Plaintiff without any justification for doing so.

86. Any justification offered by TEKsystems as to why it allegedly engaged in the complained of conduct or for the adverse employment actions taken against Plaintiff is either false or insufficient to support the nature of the adverse employment actions taken and the viability as to why the adverse employment actions taken were proportionate to the justification offered.

87. The actions complained of herein constitute adverse employment action and are prohibited under Title VII.. *See* 42 U.S.C. § 2000e-2(a)(1) (actionable adverse actions include "discharg[ing]," or otherwise discriminating with respect to the "terms" and "conditions" of employment).

88. TEKsystems made no efforts at all to accommodate Plaintiff's sincerely held religious beliefs and terminated him as a result of his sincerely held religious beliefs.

89. Accommodating Plaintiff would not have imposed an undue hardship on TEKsystems, as evidenced by the fact that it is impossible, as a remote worker, for Plaintiff to transmit COVID-19 to anyone within TEKsystems or any customer of TEKsystems.

90.     Other similar employers engaged in the same business as TEKsystems have accommodated their employees, including their remote workers based on sincerely held religious beliefs.

91.     The actions complained of herein violate Title VII.

92.     As a direct and proximate result of the aforesaid complained of conduct and violation of Title VII, Plaintiff sustained pecuniary and non-economic injuries in an amount that exceeds $75,000.00, including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

## COUNT II
### HOSTILE WORK ENVIRONMENT/HARASSMENT
### Violation of Title VII, 42 U.S.C. §§ 2000e, *et seq.*

93.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

94.     TEKsystems subjected Plaintiff to harassment and a hostile work environment because of her religion. Such conduct includes, but is not limited to, being interrogated in a threatening manner about her religious beliefs, having her beliefs mocked and ridiculed, having false information communicated to co-workers and colleagues, and being forced to endure threats intimidation by TEKsystems supervisors.

95.     This course of conduct was motivated by Plaintiff's religion, including his religious beliefs and practices.

96.     As such, TEKsystems engaged in a series of separate acts which constitute one unlawful employment practice for purposes of anti-discrimination law.

97.     The harassing conduct was so severe and pervasive that a reasonable person in Plaintiff's position would find his work environment to be hostile or abusive.

19

98.    As a direct and proximate result of the aforesaid complained of conduct and violation of Title VII, Plaintiff sustained pecuniary and non-economic injuries in an amount that exceeds $75,000.00, including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

### COUNT III
#### FAILURE TO ACCOMMODATE
**Violation of Title VII, 42 U.S.C. §§ 2000e, *et seq.***

99.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

100.    TEKsystems discriminated against Plaintiff by failing to grant his request for a religious accommodation of his sincerely held religious beliefs and religious practices.

101.    Plaintiff's *bona fide* religious beliefs and practices conflict with certain TEKsystems employment practices, policies, requests, and/or requirements, including *inter alia* TEKsystems' mandatory vaccination policy.

102.    Plaintiff brought this conflict to TEKsystems' attention and requested an accommodation as a result of this conflict.

103.    Plaintiff's religious beliefs and practices were the basis for the adverse employment actions TEKsystems took against Plaintinff, including TEKsystems' decision to terminate Plaintiff's employment.

104.    Accommodating Plaintiff's request for religious accommodation would not have imposed an undue hardship on TEKsystems.

105.    Requiring Plaintiff to become vaccinated would not have conferred any benefit on TEKsystems.

106.    As a direct and proximate result of the aforesaid complained of conduct and violation of Title VII, Plaintiff sustained pecuniary and non-economic injuries in an amount that exceeds $75,000.00, including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

### COUNT IV
#### RETALIATION
**Violation of Title VII, 42 U.S.C. §§ 2000e, *et seq.***

107.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

108.    Plaintiff engaged in activity protected by Title VII, including, but not limited to, making requests for religious accommodation, and complaining about and opposing unlawful discrimination and harassment.

109.    As a direct and proximate result of Plaintiff's engagement in protected activity, TEKsystems subjected Plaintiff to adverse employment actions, including *inter alia* the termination of his employment.

110.    Such actions constitute retaliation in violation of Title VII.

111.    As a direct and proximate result of the aforesaid complained of conduct and violation of Title VII, Plaintiff sustained pecuniary and non-economic injuries in an amount that exceeds $75,000.00, including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

### COUNT V
#### UNLAWFUL TERMINATION
**Violation of Virginia Public Policy**

112.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

113.    Under Virginia law, certain grounds for terminating a worker are so contrary to public policy as to be actionable.

114.    Virginia courts have recognized that, where a worker acts in accordance with a statutorily granted right and is terminated because of such action, a cause of action will lie.

115.    It is the policy of the Commonwealth of Virginia to safeguard all individuals within the Commonwealth from unlawful discrimination because of *inter alia* religion in employment, to preserve the public safety, health and general welfare of citizens of Commonwealth, and to further the interests, rights and privileges of individuals within the Commonwealth.

116.    As set forth in greater detail above, TEKsystems terminated Plaintiff because she engaged in statutorily granted rights, including freely exercising his religion, by requesting a religious accommodation, and by complaining about and opposing religious discrimination.

117.    As a direct and proximate result of the aforesaid complained of conduct and violation of Title VII, Plaintiff sustained pecuniary and non-economic injuries in an amount that exceeds $75,000.00, including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

## DECLARATORY RELIEF

1.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

2.    A present and actual controversy exists between Plaintiff and Defendants concerning Plaintiff's rights and Defendants' respective duties. Plaintiff contends that Defendants violated his rights under Title II of the ADA and FEHA. Plaintiff is informed and believe, and

thereon allege, that Defendants deny these allegations. Declaratory relief is therefore necessary and appropriate.

      3.     Plaintiffs seek a judicial declaration of the rights and duties of the respective parties.

## ATTORNEY'S FEES

Plaintiff is entitled to an award of attorney's fees and reimbursement of the costs and expenses incurred in relation to prosecuting this action pursuant to Title VII, 42 U.S.C. §2000e-5(k) and any other applicable statutory provision(s) under which this action is brought.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgment in Plaintiff's favor, and award Plaintiff such relief as to make Plaintiff whole and remedy the aforesaid violations; and hold Defendants' jointly and severely liable and in doing so, award all legal and equitable relief provided by law, including but not limited to:

      a.     Declaratory relief finding Defendants' actions are unconstitutional;

      b.     Permanently enjoin Defendants from engaging in the unlawful discrimination and retaliation complained of herein;

      c.     Grant all injunctive relief necessary to bring Defendants into compliance with the ADA and California law;

      d.     Grant declaratory relief;

      e.     Award compensatory damages for Plaintiffs' emotional pain and suffering, in an amount to be proven at trial;

      f.     Award punitive damages in an amount to be determined at trial;

      g.     Award treble damages;

      h.     Award statutory minimum damages;

i.      Order Defendants to pay Plaintiffs' reasonable attorneys' fees, reasonable expert witness fees, and other costs of this action;

j.      Award interest on damages, including pre- and post-judgment interest and an upward adjustment for inflation; and

k.      Grant such other and further relief as the court deems just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury of all claims and causes of action so triable.

Dated: March 8, 2023

Respectfully submitted,
JAMES FOLSOM

By:   /s/ MICHAEL A. YODER
Michael A. Yoder* (VSB: 93863)
LAW OFFICE OF MICHAEL A. YODER, PLLC
2300 Wilson Blvd., Suite 700
Arlington, VA 22201
Tel: (571) 234-5594
michael@yoderesq.com

*Counsel for Plaintiff*

24